**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**COURT FILE NO.:  2:24-cv-698**

| | |
|---|---|
| Linda Feldman, | |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Summit Mortgage Corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## INTRODUCTION

1.      This action arises out of Defendant Summit Mortgage Corporation's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and the Florida Consumer Collection Practices Act, Florida Statutes § 559.55 *et seq*.

## JURISDICTION

2.      Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681 as the claims asserted present a federal question and has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct at issue occurred in this District, Plaintiff resides in this District, and Defendant conducts business in this District.  See *Ford Motor Co. vs. Montana Eighth Judicial District Court,* 2021 WL 1132515 (U.S. March 25, 2021).

## PARTIES

4.     Plaintiff, Linda Feldman (hereinafter "Plaintiff"), is a natural person who resides in the City of Fort Myers, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) and Florida Statutes, Section 559.55(8).

5.     Defendant Summit Mortgage Corporation (hereinafter "Defendant") is a financial institution that conducts business in the State of Florida. Defendant has a principal place of business located at 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047. Defendant has an agent of service in Florida of Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301. The defendant is a "person" as defined in 15 U.S.C. § 1681a(b) and Florida Statutes, Section 559.55(5) and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

6.     Consumer credit plays a major role in the lives of American consumers entering into the American marketplace and the economic system in general.  Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions.   Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

7.     Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.  15 U.S.C. § 1681(a)(1).

8.     The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

9.     The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act.   Senator Proxmire (D-WI) announced his intention to create legislation addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., Fair Credit Reporting 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

10.    Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information.   Anthony Rodriguez et al., Fair Credit reporting 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

11.    Congress considered inaccurate and misleading information to be the most serious problem.  Anthony Rodriguez et al., Fair Credit Reporting 10 (5th ed. 2002).

12.    The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected.  Anthony Rodriguez et al., Fair Credit Reporting 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

13.    An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's credit worthiness, but can also prevent consumers from full

3

access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed.  Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

14.   Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act.   The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes.  These provisions were originally scheduled to sunset in 2003, but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003.  Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92.  Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

15.   The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes.  *See* 15 U.S.C. § 1681i(a)(5)(D).

16.   Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance.  e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to

4

the appropriate data furnishers.   e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

17.     That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II."   It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

18.     Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

19.     Metro II codes are used on an industry wide form known within the credit industry as an Automated Credit Dispute Verification ("ACDV") electronic form.

20.     The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

21.     These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

## FCCPA AND FDCPA STATUTORY STRUCTURE

22. The FCCPA is a state consumer protection statute, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  Fla. Stat. §§ 559.55 and 559.72. The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector— who "uses

any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

23.     Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information regarding a debt *directly or indirectly* to any person *through any medium*" (emphasis added).  15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2).

24.     For example, the FDCPA prohibits a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, or from using false, deceptive, or misleading representations or means in connection with the collection of any consumer debt.  *See* 15 U.S.C. §§ 1692(d)-(e).

25.     The FCCPA imposes liability on any creditor/person as well as any debt collector— who "Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.  Fla. Stat. § 559.72(9)."


**FACTUAL ALLEGATIONS**

26.    In April of 2019, Plaintiff incurred a financial mortgage obligation with Defendant. The mortgage was assigned the account number ending in 4301.

27.    In September of 2022 Hurricane Ian decimated southwest Florida and specifically Plaintiff residence and neighborhood.

28.    Because of the impact Hurricane Ian had on her property, Plaintiff contacted Defendant on September 29, 2022, and requested forbearance relief.

29.    Plaintiff requested and received forbearance from Defendant so she did not need to make mortgage payments starting in October of 2022.

30.    Plaintiff received multiple delinquent notices from Defendant from September 29th through the end of October 2022.

31.    During this time Plaintiff made numerous telephone calls to Defendant to have them stop sending the delinquent notices.  During the telephone calls, Defendant's representatives told Plaintiff to ignore the delinquent notices since she was in forbearance.

32.    Finally, at the end of October 2022, Plaintiff spoke with Defendant's representative, Benita Dills, who explained to Plaintiff that by Defendant's error Plaintiff's account ending in 4301 was placed in delinquent status instead of forbearance.

33.    Defendant's representative, Ms. Dills, repeatedly apologized for Defendant's error and she also stated that Defendant would fix the negative credit reporting.

34.    Ms. Dills was able to fix the error and put Plaintiff's account into forbearance.

35.    Unfortunately, at that time Plaintiff's stellar credit profile was affected as Defendant had already reported to the national credit reporting agencies that Plaintiff was late on

her November 2022 mortgage payment, causing Plaintiff's credit score to drop by a hundred points.

36. Because Defendant had placed Plaintiff's account ending in 4301 incorrectly into delinquent status instead of forbearance status it put a negative tradeline on Plaintiff's credit reports.

37. Defendant has repeatedly failed to update their reporting of the account at a minimum as disputed to the credit reporting agencies or suppressing any of the reporting of the account.

38. Despite numerous telephone calls and direct disputes being submitted to Defendant starting in November 2022, it did not take reasonable steps to investigate Plaintiff's claims of misconduct and failed to resolve or correct the erroneous and adverse credit reporting.

39. Plaintiff has spent numerous hours attempting to correct this egregious breach of fiduciary duty and credit reporting error by Defendant costing her in excess of $2500 in lost time.

35. Finally after she had exhausted all attempts to communicate with Defendant directly, on or about April 2023, Plaintiff submitted disputes to the national credit reporting agencies, Trans Union (hereinafter "Trans Union"), Equifax Information Services LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian"), pursuant to 15 U.S.C. § 1681i, stating, in relevant part, that the account identified was being misreported as having a late payment and/or past due.

36.     The credit reporting agencies identified above then communicated Plaintiff's disputes to Defendant in automated consumer dispute verification ("ACDV") forms, in accordance with 15 U.S.C. § 1681i(a)(2).

37.     Despite Defendant having internal records demonstrating its error, Defendant intentionally and incorrectly confirmed for the credit reporting agencies that the account was 30 days past due in November 2022, in violation of 15 U.S.C. § 1681s-2(b).

38.     By failing to reasonably investigate Plaintiff's dispute of furnishing inaccurate information regarding Plaintiff's account to the credit reporting agencies after Plaintiff had notified Defendant of the inaccuracy, Defendant also violated 15 U.S.C. § 1681s-2(b).

39.     Defendant failed to conduct a reasonable investigation into Plaintiff's April 2023 disputes, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate account history, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Code) to "XB," and, instead, incorrectly verified to Trans Union, Equifax, and Experian that Plaintiff's alleged account was being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

40.     Defendant erroneously responded that Plaintiff's account had a late payment history.

41.     Then in January of 2024 Plaintiff submitted disputes again to the national credit reporting agencies, Trans Union, Equifax, and Experian, pursuant to 15 U.S.C. § 1681i, stating, in relevant part, that the account identified was being misreported as having a late payment and/or past due.

9

42.   The credit reporting agencies identified above then communicated Plaintiff's disputes to Defendant in automated consumer dispute verification ("ACDV") forms, in accordance with 15 U.S.C. § 1681i(a)(2).

43.   Again, Defendant failed to reasonably investigate her disputes and incorrectly confirmed for the credit reporting agencies that the account was 30 days past due in November 2022, in violation of 15 U.S.C. § 1681s-2(b).

44.   Plaintiff has suffered extreme emotional distress, anxiety, depression, despair, loss of sleep, loss of time, nausea, headaches, mental anguish, and still is adversely impacting her overall credit profile and her ability to obtain credit (i.e. her payment history).

45.   Plaintiff has also suffered by paying increased insurance premiums and denied credit because of the damage to her credit report.

46.   Plaintiff has also incurred out-of-pocket loss because of Defendant's inaccurate credit reporting in the form of postage, loss of time spent communicating with Defendant in excess of 25 hours, and payment of attorney's fees and costs incurred.

**PLAINTIFF'S DAMAGES**

43.   As a result of Defendant's inaccurate furnishing/reporting, Plaintiff has suffered out-of-pocket loss, reduced credit score and profile, emotional distress, frustration, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

44.   Plaintiff is entitled to attorney's fees and costs from Defendant pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

45. Plaintiff is also entitled to $1,000 in statutory damages, actual damages, attorneys fees and costs pursuant to Florida Statutes § 559.77.

## RESPONDEAT SUPERIOR LIABILITY

46. The acts and omissions of employees and other agents of Defendant who communicated with Plaintiff and/or with the CRAs were committed within the time and space limits of their agency relationship with their principal, Defendant.

47. The acts and omissions by these agents were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant.

48. By committing these acts and omissions against Plaintiff, these agents were motivated to benefit their principal, Defendant.

49. Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its agents, including but not limited to violations of the FCRA.

## STANDING

50. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

   a. a valid injury in fact;

   b. which is traceable to the conduct of Defendant; and

   c. and is likely to be redressed by a favorable judicial decision.

See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), and Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

51.    In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

*The "Injury in Fact" Prong*

52.    Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo. Id.*

53.    For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists.   In the present case, Defendant's actions negatively impacted Plaintiff's credit.

54.    For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548.  In the instant case, Plaintiff personally suffered worse credit and emotional distress.

*The "Traceable to the Conduct of Defendant's Prong*

55.    The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that Plaintiff's injury is traceable to the conduct of Defendant.

56.    In the instant case, this prong is met simply by the facts that the violative conduct contemplated in this Complaint was initiated by Defendant directly, or by Defendant's agents at the direction of Defendant.

*The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

57.    The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

12

58.  In the present case, Plaintiff's Prayers for Relief include a request for statutory and actual damages. The damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.

59.  Furthermore, the award of monetary damages redress the injuries of the past and prevents further injury by Defendant in the future.

60.  Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff has standing to sue Defendant on the stated claims.

## **TRIAL BY JURY**

61.  Plaintiff is entitled to and hereby demands a trial by jury.  U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## **CAUSE OF ACTION**

### **COUNT I.**

### **VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 *et seq.***

62.  Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

63.  Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it and documentation provided by Plaintiff, and failing to update and/or remove the inaccurate tradeline or, in the alternative, to report the

account as "disputed" by changing the Metro II CCC (Compliance Condition Codes) Code to "XB."

64.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered actual damages not limited to the detriment to his credit rating, out-of-pocket loss, emotional distress, embarrassment, mental anguish, and anxiety in an amount to be determined at trial.

65.    Defendant's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

66.    Alternatively, Defendant's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

67.    Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## CAUSE OF ACTION

### COUNT II.

### VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT – FLORIDA STATUTES § 559.55 *et seq*.

68.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

14

69.     Defendant is subject to, and violated the provisions of, Florida Statutes, Section 559.72(9) claiming or attempting to enforce a debt when such person knows that the debt is not legitimate.

70.     Defendant attempted to collect amounts not owed as Plaintiff was in a forbearance agreement with Defendant.

71.     Plaintiff signed a forbearance agreement with Defendant and at all material times Defendant was aware that Plaintiff was in a forbearance agreement.

72.     Defendant still continued to report Plaintiff as delinquent on her credit report, continued debt collection efforts on payments that were in a forbearance.

73.     As a direct and proximate result of Defendant's actions, Plaintiff has endured emotional distress, actual damages, statutory damages, attorney's fees, and costs pursuant to Florida Statutes, Section 559.77.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- an award of actual and statutory damages against Defendant for its violations of the FCRA and FCCPA pursuant to 15 U.S.C. §§ 1681n and 1681o and Fla. Stat. § 559.77;
- an award of punitive damages against Defendant for its willful noncompliance with the FCRA pursuant to 15 U.S.C. § 1681n and Fla. Stat. § 559.77;
- an award of costs and attorney's fees against Defendant pursuant to 15 U.S.C. §§ 1681n and 1681o and Fla. Stat. § 559.77; and
- such other and further relief as the Court may deem just and proper.

Dated this 25th day of June 2024.

Respectfully submitted,

*ATTORNEYS FOR PLAINTIFF*

By:/s/ *Young Kim*
Young Kim, Esq., FBN 122202
CONSUMER LAW ATTORNEYS CORP.
2727 Ulmerton Rd., Ste. 270
Clearwater, FL 33762
Phone: (877) 241-2200
ykim@consumerlawattorneys.com
federalservice@consumerlawattorneys.com

Thomas J. Lyons, Jr., Esq.
MN Attorney I.D. #: 249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
tommy@consumerjusticecenter.com
(*To Be Admitted Pro Hac Vice*)

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

I, Linda Feldman, declare under penalty of perjury, as provided for by the laws of the

United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that

   all of the facts contained in it are true, to the best of my knowledge, information, and

   belief, formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law

   or by a good faith argument for the extension, modification, or reversal of existing law.

4.  I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendant, cause unnecessary delay to Defendant, or create a needless increase in the cost of litigation to Defendant named in the Complaint.

5.  I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Linda Feldman